Thank you, Your Honors. This is a case of a denial of patent preliminary injunction where discretion was abused because the claim interpretation on which the denial was based was an erroneous claim interpretation. The word image in the claim has been given a very narrowed artificial construction inappropriate for a term, a generic term such as the word image. You can see the nature of the invention and the nature of the claiming by turning first to the claims and what you can see in the body of the claims is that this invention does not distinguish itself from the prior art by being a markless system, markless not being present anywhere in the claim and certainly not in the body of the claim. But it distinguishes itself instead based upon it being a matter of the use of arrays in the registration of colored layers in offset printing on a web in a printing machine. And you can see that in the fact that it states that it creates reference arrays and that it then creates color arrays and it compares the arrays. So this is not a claim and not a system that needs to distinguish itself by being markless and it does not do so in its claims. The word image in its preamble has been given in part a circular definition, a definition that an image is an image, but then even worse a very narrowed circular definition because the image becomes less than half of what the word image would otherwise be capable of covering. It would cover. I guess the key question here is the language and the specification, right? I understand your Honor's point and I would suggest that it is not because this is a Ventana pattern case. It is not a Simon pattern case. Well, the question is what significance are we going to attribute to the language and the specification? I mean that does seem to be the key issue. It is the issue raised, yes, in the district court that resulted in the decision that we have. So what is the standard? It strikes me that there is a difference between interpreting a claim and finding a disclaimer in the specification. A disclaimer, I guess, would be in a situation where the language of the claim clearly covered it, but that there was enough in the specification to constitute a disclaimer, a part of the claim coverage, in which event you would apply a clear and unmistakable standard. Whereas if it is an it seems to me that you don't apply that clear and unmistakable standard. Do you agree with that? I think that is a fair point and I would say that it has been decided at the level of this being a clear disavowal, a manifest exclusion, and I would tell you that it is neither. It is not a clear disavowal. It is not a manifest exclusion. I think those two are synonyms. I guess my question was do we have to find that it is a clear disavowal since it is an image meant by the term image rather than a situation in which the claim clearly covers this and there is an argument that there is a disclaimer in the specification. Your Honor, I would say that we are here in a request that you tell the district court this interpretation is wrong and send the case back to the district court without an interpretation of your own. So I would think you do not need to draw the distinction you conclude that this is neither a clear disavowal nor an appropriate interpretation of the term. The word image is actually used in subcategories of images in the specification. So this patent knew how to speak to less than all of images when it wanted to speak to less than all of images because it speaks to half tone images and full tone images and it does that at the top of column two. And that is actually the kind of language that could have made its way into the claim but didn't and it would in fact have drawn a distinction between markedness and marklessness and it doesn't do that. And the reason is because it is in fact really a universal system that rises above needing to rely upon marks or needing to rely upon dots in an image. It is functional with both images that have marks and registration marks and those that do not. It is simply a matter of what is under the imaging device and will it allow for registration. It would be a rare case that would go about defining an invention and then have in the preamble in a place of a work piece a term that could be interpreted to take away from that invention half of its functionality. We actually have a record in which no one disagrees that this is an invention that functions in marked mode and markless mode. There hasn't been a position taken by our opponent that the district court made a mistake in properly concluding that this is an invention that functions in both marked and markless mode. But the interpretation of the word image, the work piece and the preamble has now taken away that marked mode of functionality from the coverage of the pattern case and not a PsyMed pattern case. The PsyMed case and all of the cases that follow from it really fall out into two categories of cases. Cases where the applicant has expressed with definiteness what the invention is. For example, in the PsyMed case saying all embodiments of the invention contain X. This is not that type of case. There is no similar expression in this patent. Another category... Suppose in column one that there had only been a discussion of the 530 patent and that the paragraph about the 680 patent simply didn't exist. Would you agree that that would suggest that image is limited to a markless system? I would think not in this situation. Why would that be? I would think it's because of the placement and usage of the term as to whether it is clear in constituting a disavowal or not. I don't think this rises to the level of clear disavowal. Let me come back if I could to Judge Dyke's original question. Let's suppose there were no such thing as a disavowal doctrine. It's taken off the table altogether. You still have the task of construing the term image. So to go back to Judge Dyke's immediate question, why doesn't that paragraph tell us something important about the meaning of the term image without regard to disavowal, just in terms of the definition of the term image as used in this patent? It doesn't because of the ambiguity of its expression and the fact that it is in conflict with the claims and their usage of the term and how they go about describing what that term image needs to be for this invention to function upon it. And the claims are fairly explicit about what this image needs to be for the claims to function upon it. It must be an image that has two colors, so it is defining the image as something of two colors. It must be able to be picked up by an imaging device, so it must be visible to be seen. It must be on a web, so we know that it is something that is printed there. So we've actually got expression about what the image needs to be in the body of the claim, which goes about explaining what the invention is. And again, it's a matter not of marklessness, it's a matter of arrayedness. But why isn't the term image ambiguous as to whether it's talking about the picture or the picture plus registration marks that are outside the picture? I would say it is not ambiguous, but instead it is what might be considered a parallel term, and that is universal, without limit, generic. And that's really what it is. It is a generic term. And I don't think it's wrong to have... I'm having trouble with that, because image certainly can mean the picture itself, right? Yes. So that seems to me to create an ambiguity. I would suggest to you that the place we should start is, and as I understand this Court has the ordinary meaning, and in this case, to me, image has an ordinary meaning, and it is not the definition of the district court, which is less than all of images, certainly substantially less than all of images. So if we start with ordinary meaning, and I think we all have a sense of what the word image means, you and I are seeing an image of each other right now, because our eyes take that in.  No, I'm not saying go to a dictionary first, but I don't think there's anything wrong with taking the word for its ordinary meaning, as we all would know of a term, as we would use it in our common usage of language. We have a sense of what the word image is. On the other hand, you could turn to a dictionary, and you would find quite a broad definition of the word image there. Optical counterpart of a source, from a source, and that's the word image. And I think it is appropriate to have that dictionary or common sense meaning of the term, and start from there, and only deviate from that, I think, if there is something of the specification that really effectively forces us to another interpretation, especially where we have claims that do go about talking about the characteristics of the work piece upon which the invention works. The other half of assignment cases are those cases where the patent actually gives an explicit definition of a claim term. This is not an explicit definition of a claim term. It is a use of a claim term, yes, but it doesn't rise to the level of being a definition. It's an ambiguous use of the term. And it is in the context of this Ventana pattern where-  I see your point. It is ambiguous as used in this paragraph, is my point. I think it's fairly clear how it gets its use in the claims, the reason being the fact that the claims do go about talking about the characteristics of an image that are needed for this device to function. And then that, to me, is definitional to the client of what an image is in the context of these claims. It's a thing on a web with two colors that can be recognized by an imaging device. That's a fair characterization of what it is. In our language used in the district court, it's the optical counterpart from a source. And that's what's being put on the web in these machines. It is something taken from elsewhere and printed on a web as the source. I think it actually has lack of ambiguity in the claims. I think it has ambiguity as it gets used in this background of the specification. It doesn't rise to the level of a definition of the term. It rises to the level of an ambiguous use of a term which gets used differently elsewhere as well because it does get used elsewhere where it speaks to half-tone images and full-tone images and consistent then with the claims, it doesn't divide the world into just full-tone images or half-tone images. It doesn't talk about functionality a lot less and that's because it is this universal registration that rises above these two modes of functionality. Mr. Shiffley, you are into your rebuttal time. Would you like to save it? Thank you. Well, we'll hear from Mr. Lankford. Mr. Your Honor, David Lankford for QI Press. I think the doubt disavowal is absolutely clear and even if the court were to find it's not clear, I think the term image is obviously and should be construed as the district court construed it. And I think that if you go to the very words that are used, the section, the background of invention section that was referenced earlier by Judge Dyke starts out with a reference to the 530 patent which was a patent as stated in the 577 patent that used a mark to register color. And there is no question that the word state, quote, however the requirement of a registration mark distinct from, and those are the words of the patent, distinct from the image being printed requires additional paper, etc. And it goes on to talk about the problems with that. Distinct from also we can understand what that means and we can take it from a dictionary definition if the court chooses and that means different from, apart from. Distinct from is a word that the patent holders and the drafters clearly used as separating out a mark that was a registration mark to control color to color registration and the image being printed. That is a very right at the outset. What they're talking about is a registration mark and then the image being printed and that's a quote. They also say, meaning the 577 patent, in terms of the shortcomings, it then says, which I think that Quad harps on a little bit, it would be advantageous to provide a system which is able to provide color to color registration based, and this is a key word, only on the image being printed. So the distinction is made right up front in the words of the background of invention section. They are separating out something that is a mark and something that is a quote, the image being printed. Those are two separate things. So in my view, we obviously disagree with Quad. There's no ambiguity there at all. I think I understand the distinction between full tone and half tone, but give me your understanding of the distinction between the two. Well, in that very, that's the second column in that particular page of the patent. That's referring to the Wales patent. The Wales patent was another prior art patent, but it used what was called a dot location. The dot location was actually within the image. So it might be a dot on the edge of a person's glasses who was depicted in the image. And that's a half tone image? The dot location is not necessarily a half tone image, no, your honor. It would be a dot. It would often be a black dot. But what's the difference between half tone and full tone? Well, a full tone image would be being able, I believe, to get every single tone in the image so that in the printed image, you would be able to get all the tones, both the deep and the deep. The half tone is the medium tones. And one of the things that is being criticized here in the Wales patent, which is also the Buck-Crowley patent, H.W. Buck-Crowley was our testifying expert at the district court level. One of the disadvantages being cited by the inventors of the 577 patent is that if you were to use that black dot that is distinct from the image, but within it itself, you wouldn't be able to get all of the tones of the image. And that was a detriment as far as the inventors of the 577 patent were concerned. But more importantly, please. But I still have the same question that Judge Bryson had, is the difference between the half tone and the full tone. Is the full tone image produced by putting dots one on top of the other as opposed to the half tone image having the dots separated and the visual appearance resulting from the individual dots? Or in terms of the mechanics of it, what's the difference? Your Honor, I believe that the difference between a half tone image and a full tone image is, first of all, the four corners of the image are the same. However, the ability of that specific dot location to control registration such that every single tone in the spectrum that's required from highlights, for example on a forehead, or the darks, the iris of the eye, would not be achieved as well as it could be if you actually referenced the portion of the image itself to control color registration. And I believe that that's what's being criticized. By the 577 patent inventors and the drafters of the patent itself. That is a different prior art technique and I believe that the quads focus on the term image there is irrelevant to what we're doing here. These were two prior art techniques, one a dot location distinct from the image but within it, and the 530 patent and other prior art patents that had registration marks on the margins of the page outside and distinct from the image being printed. Those are the two prior art techniques. This proposed to disclose a system that would improve on that dramatically. And as you go through the patent itself, you can see figure 2E. That's something that in both quads briefs and our briefs and in the 577 patent, that's a great example of what is trying to be achieved here. Never does quad or the drafters of the 577 patent ever talk about a mark being outside the image as depicted in figure 2E. In fact, they show you section 68 of that image. And that is a section of the image, whether it's a hand or a flower, which is depicted in that schematic. And it is the picking up of that actual portion of the image that is used for registration. That's what's used for registration. There's no reference to marks on the side of the page. In fact, never throughout the registration marks to actually control registration. What it is, it's a pre-press image of section 68 of the hand or flower that's put into a computer in a memory and then compared to the on-press image that is moving across on the web, across rollers at a very, very high speed. And the constant flashing of the camera picks that up, compares it to the computer memory of what that section 68 should be, the portion of the hand or flower, and then compares the two electronically. That has nothing to do with what the MRC Plus does and that is a finding of fact in the district court's opinion. Back to the word image, the disavowal continues. As you get into the preferred embodiment and you go down at the end of the preferred embodiment, and I'll quote it to your honors, it states that it refers to a system. Where are you reading? I'll get the patent itself, your honor. It's set column 15, line 33. After the description of the preferred embodiment, the 577 patent specifically states, quote, the presently preferred embodiment of a new color-to-color registration system based upon an analysis of the color densities of a portion of a printed image, comma, rather than registration marks or dot locations of a printed image has been described above in detail. So that is specifically distinguishing, again, just as in the background of invention section, a distinction between a registration mark or series of marks or a dot location within the image. And that was described in the background of invention section. So within the specification itself, this patent reiterates specifically the disavowal that is stated in the background of invention section. And the distinction up front in the background of invention section, and the patent drafters specifically use the words distinct from. Registration mark distinct from the image to be printed or the image being printed. And those are distinctions that are clear. There's no ambiguity about it. Now, obviously, in the briefs and at the district court level, there was extrinsic evidence as well. And the extrinsic evidence that, in fact, the court refers to, the district court, was, in fact, the 240 patent. And the 240 patent was a subsequent patent that the inventors, plus an extra inventor named Mr. Randall Freeman, were the named inventors on. It's assigned to QuadTech. And at column three, line 22, it refers back to the 577 patent. These are the same people who drafted the 577 patent and are the inventors of it. And it specifically states, the markless register control systems described in U.S. patent number and then the 577 number. So this is an admission against interest by the very same people who are the inventors and drafters of the 577 patent. They don't say a dual system that can do marked and markless. They call it a markless system. And although, certainly, there are cases that the Federal Circuit Court has drafted that state that the inventor's statements aren't necessarily important, there are other cases that this Federal Circuit Court has drafted that state that when they are statements against interest, they are often deeply important to determining the scope of the claims. And with respect to your honors, we think that in those two patents, particularly the 577, but later in the extrinsic patent of the 240, that those are clear statements. They are. There's no ambiguity about it. That's a markless system. That's all it is. That's all it was meant to be. And it was meant to improve on marked-based systems that had occurred in the past. I take it that all proceedings in this case have been stayed pending this appeal? Yes, your honor. I would have nothing further. Thank you. Mr. Shiffley, you have a little over two minutes. Thank you, your honor. I would take you to column 15 and have you refer to that and, of course, understand, first of all, that that is about a preferred embodiment. And it is about the preferred embodiment which speaks to the density type of analysis that is done in the preferred embodiment and as to which some of the claims are limited, but all of the claims are not. And I would say to you that it's true that there's no reference to a marked system as being covered by the claims in the specification. I would disagree with you. Now, I would say with you explicitly, there is no explicit use of the term marked or markless in relation to the preferred embodiment. There's no explicit use of the term marked or markless in the claims. There's no explicit use of the term marked or markless in the summary of the invention. So, yes, there is no explicit reference to the invention as marked, but there also is no explicit use of the term markless to describe the invention either. So, it's true, yes. Now, this paragraph as well, this sentence, has ambiguity in it. You can see that it could be read so that registration marks are different than dot locations of a printed image or you could read that both the registration marks and or the dot locations are both part of a printed image the way that subordinate clause gets expressed there. So, to me, it is first about a preferred embodiment. It's only about a density-based system and it's also ambiguous as to how it goes talking about where registration marks are located. The later patent that has been talked about was admittedly part of the evidence and it's that 530 patent that is discussed in the background of the invention. And as we pointed out to your honors in our briefs, it actually has a claim in which it expresses that an image includes the registration marks. So, it shows you that in this art there is usage of the art and by those of skill in the art where they put the registration marks in the image when they speak about the image. They don't put the registration marks apart from the image. They sometimes put the registration mark in the image as they talk about the image. So, we actually have ambiguity in the field itself about these kinds of matters. As well, if you go back to that paragraph in column one, you can see that this is not simply in this paragraph a discussion of the prior art 5.3 patent. It moves on to a markless system in the sentence that begins with the word additionally and then it is following that that the sentence that is relied upon by the opponent occurs. So, it's not literally about the 530 patent. It's about that immediately preceding sentence. Um. Very well. Okay. Thank you. And both counsel, the case is submitted.